IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TIM MOORE, et al., | ) |
|     Plaintiffs, | ) |
| | ) |
| vs. | )   No. 3:17-CV-1436-M-BH |
| | ) |
| PAYSON PETROLEUM | ) |
| GRAYSON, LLC, et al., | ) |
|     Defendants. | )   Referred to U.S. Magistrate Judge |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By *Special Order No. 3-251*, this *pro se* case has been automatically referred for full case management. Before the Court for recommendation is *Defendants PTX Securities, LLC, Terry Dewayne Harvey, and Plano Capital Group, LLC's Motion to Dismiss*, filed June 21, 2017 (doc. 20). Based upon the relevant filings and applicable law, the motion should be **GRANTED.**

### I. BACKGROUND

On February 22, 2017, Tim Moore, David Vednor, Roland Lentz, James Rosemeyer, Virginia Humphrey, William Martin, and Jeff Wilshire (Plaintiffs) filed this class action suit alleging violations of the Texas Securities Act against thirteen defendants, including Payson Petroleum Grayson, LLC (Payson Grayson), Matthew Carl Griffin (Griffin), PTX Securities, LLC (PTX), Dan Nichter (Nichter), EDI Financial, Inc. (EDI), Financial West Group (Financial West), MidAmerica Financial Services, Inc. (MidAmerica), Shaun Darnell Young (Young), S&M, Ltd. (S&M), Terry Dewayne Harvey (Harvey), Plano Capital Group, LLC (Plano Capital), Martin William Prinz (Prinz), and Gene Charles Valentine (Valentine) (Defendants) in Texas state court. (*See* doc. 1-3 at 23-57, 174-210.)[1] On May 31, 2017, Defendants removed this action to federal court, asserting original jurisdiction

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

under the Class Action Fairness Act provisions of 28 U.S.C. § 1332(d)(2). (doc. 1.)

At issue is a two-phase offering to invest in two Texas limited partnerships to fund the drilling, completion, and operation of two vertical wells and one horizontal well (3 Well Program) owned by Payson Petroleum, Inc.[2] (Payson), in Grayson County, Texas. (doc. 1-3 at 175-76.) The first phase offered 1,000 units at a cost of $27,000.00 per unit for the Payson Petroleum 3 Well, L.P. (3 Well), commencing on October 23, 2013, through December 31, 2013. (*Id*. at 175, 200.) Because only 277.65 units were sold, a second offering phase for the remaining 722.35 units of Payson Petroleum 3 Well 2014, L.P. (3 Well 2014), commenced on January 12, 2014, through June 30, 2014. (*Id*.) The two offerings in the 3 Well Program raised $23 million in total. (*Id*. at 200.) A private placement memorandum (PPM) was issued for each offering. (*Id*. at 175.)

Plaintiffs allege that the offering documents included statements on how:

> (1) Payson agreed to purchase 200 units in the 3 Well Program for $5.4 million; (2) in no event will Payson not purchase at least 100 units in the 3 Well Program; (3) Payson's $5.4 million capital infusion would fund 20% of the cost of the 3 Well Program; and (4) the "estimated" cost to drill and complete the wells by Payson was approximately $24 million.

(*Id*. at 176-77.) "Defendants" and "Broker-Dealer Defendants," identified as PTX, EDI, Financial West, and MidAmerica, allegedly "disseminated" these offering documents to Plaintiffs and other investors, and they "reiterated to Plaintiffs the same, in meetings and communications, at investor events, dinners, and sales presentations, and by other marketing and promoting mechanisms, in order to solicit Plaintiffs' purchases of units in the 3 Well Program." (*Id*. at 178.) They further solicited Plaintiffs' purchases of units in the 3 Well Program by e-mails, mailings, webinar slides, and unsolicited telephone calls to Plaintiffs. (*Id*. at 194.) Defendants collectively made "an estimated

---

[2] Payson is not identified as a defendant in this suit. (*see* doc. 1-3 at 174.)

2

$4,260,276.00 in sales commissions from selling units to Plaintiffs and Class Members." (*Id.* at 202.)

It was later discovered that Payson lacked the means to purchase 20% of the units and contributed nothing to the well costs. (*Id.* at 196.) The 3 Well Program was then abandoned, and none of Plaintiffs received back any portion of the difference between the $23 million that was raised in the offerings and the actual cost of the wells. (*Id.* at 178.) These funds were allegedly "appropriated by Payson . . . to the detriment of Plaintiffs and the limited partnerships." (*Id.*) On November 23, 2016, the Securities and Exchange Commission (SEC) announced that it had filed a civil action against Griffin and his brother, the owners of Payson, for violations of federal securities law by fraudulently offering interests in the 3 Well Program. (*Id.* at 195); *see SEC v. Griffin et al.*, No. 4:16-CV-00902 (E.D. Tex. Nov 23, 2016). It alleges that "the Griffins were the source of the PPMs' representations" about Payson's co-investment. (doc. 1-3 at 196.)  Griffin agreed to accept the civil penalty and did "not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the Complaint or creating the impression that the Complaint is without factual basis." (*Id.* at 198.)

Plaintiffs subsequently filed this suit, which they identify as a class action "on behalf of [themselves] and all persons and entities, other than Defendants, who purchased or otherwise acquired units in the 3 Well Program by means of two sets of fraudulent offering documents." (*Id.* at 205.) They allege that the statements made in the two PPM and offering documents are fraudulent and misleading because:

> (1) Payson never purchased a single unit and thereby contributed no money to the 3 Well Program; (2) consequently, Payson paid nothing towards its 20% share of the cost of the 3 Well Program; (3) Payson lacked the financial means to make the $5.4 million payment; (4) the true cost of drilling and completing the wells was $16-$18 million; (5) the "estimated" $24 million cost to drill and complete the wells was Payson's undisclosed fixed fee for drilling the wells, regardless of the actual drilling

3

> cost; and (6) Payson pocketed the difference between the $23 million raised in the two integrated offerings and the actual drilling cost–$16-$18 million.

(*Id*. at 177.) Plaintiffs further allege that they were never informed that "Payson had a secret 'turn-key' agreement with the limited partnerships whereby Payson would retain as its putative drilling fee, $24 million net of actual well costs of the projected $27 million raised in the offering." (*Id*. at 178.) They contend that these misrepresentations and omissions were made so that Payson could "fleece investors by unlawfully pocketing the difference between the false $24 million estimate and the wells actual cost." (doc. 30 at 8.)

Plaintiffs claim in Count I that "All Defendants" are liable under Article 581-33A(2) of the Texas Securities Act for "offering, soliciting, and/or selling units the 3 Well Program to Plaintiffs and Class Members by means of untrue statement of material facts and/or omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading." (doc. 1-3 at 206-07.) They allege in Count II that the "Control Person Defendants," identified as Griffin, Harvey, Plano Capital, Prinz, Valentine, S&M, and Young, are jointly and severally liable under Article 581-33F(1) of the Texas Securities Act as the "senior officers, directors, significant shareholders, or have indirect control over" the Broker-Dealer Defendants. (*Id*.) Plaintiffs seek monetary relief in an amount over $1,000,000.00, exemplary damages, and attorney fees. (*Id*. at 208.)

On June 21, 2017, PTX, Harvey, and Plano Capital[3] (PTX Defendants) filed a motion to dismiss for failure to state a claim. (doc. 20.) With a timely filed response and reply, this motion is ripe

---

[3] The petition identifies PTX as the "Managing Broker Dealer for the units offered and sold in the 3 Well Program," Plano Capital as the "parent company of Defendant PTX since July 2012," and Harvey as the "President of Defendant PTX since September 2012." (doc. 1-3 at 180.)

4

for recommendation. (docs. 30, 31.)

## II.  MOTION TO DISMISS

PTX Defendants move for dismissal of Plaintiffs' claims under Rule 12(b)(6) for failure to comply with the more stringent pleading standards required by Rule 9(b). (doc. 20.)

**A.**     **Timeliness**

Plaintiffs argue as an initial matter that the PTX Defendants' Rule 12(b)(6) motion is "untimely" because they filed an answer in the state proceedings prior to removal, and that it should instead be evaluated as a motion for judgment on the pleadings under Rule 12(c). (doc. 30 at 12-13.)

Under the Federal Rules of Civil Procedure, any motion filed under Rule 12(b) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. Proc. 12(b). "[M]otions to dismiss filed after responsive pleading are rarely dismissed as improper," however. *Reeves v. Wells Fargo Bank*, *N.A.*, No. EP-13-CV-318-DCG, 2014 WL 12492038, at *3 (W.D. Tex. Apr. 14, 2014). Courts will either treat the motion as if it were timely filed, or alternatively, construe such a motion to be a Rule 12(c) motion for judgment on the pleadings. *Id.* (collecting cases). When the defendant has previously included failure to state a claim for which relief may be granted as a defense in his or her state court answer to the original petition, "thereby giving notice" of the defense, then courts will generally permit a Rule 12(b)(6) motion to be filed after the answer. *Delhomme v. Caremark Rx Inc.*, 232 F.R.D. 573, 576 (N.D. Tex. 2005) (collecting cases).

Here, the PTX Defendants filed a collective answer in state court before removal but did not assert failure to state a claim as an affirmative defense. (*See* doc. 1-3 at 93-94.) They agree in their reply that "treatment as a 12(c) motion is permissible" but is not "informative to the outcome," since both motions under 12(c) and 12(b)(6) apply the same standard. (doc. 31 at 2); *see Great Plains Trust*

5

*Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) (same standard applied to Rule 12(c) motion as to Rule 12(b)(6) motion); *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (same). Accordingly, the PTX Defendants' motion will be considered as if asserted under Rule 12(c). *See L'Amoreaux v. Wells Fargo Bank, N.A.*, No. A-13-CV-052 LY, 2013 WL 12097806, at *2 (W.D. Tex. May 7, 2013), *adopted by* 2013 WL 12098738 (W.D. Tex. July 15, 2013) (considering a Rule 12(b)(6) motion to dismiss as a Rule 12(c) motion instead because it was brought after the defendant filed an answer in the state court prior to removal).

**B.    Legal Standard**

A motion "'brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'" *Great Plains Trust Co.*, 313 F.3d at 312 (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)). The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6). *See Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007); *see Hoffman v. L & M Arts*, 2011 WL 3567419, at *4 (N.D. Tex. Aug.15, 2011) (citing *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010)).

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). Regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th

6

Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

C.  **Texas Securities Act**

PTX Defendants contend that Plaintiffs' petition fails to state a claim under the Texas Securities Act because it does not comply with Rule 9(b), as it fails to identify "the specific defendant who purportedly provided the offering materials to any plaintiff, the date on which such materials were provided, the date on which any meetings or presentations occurred, or the location of any

7

meetings or presentations." (doc. 20 at 6.)

Article 581–33(A)(2) of the Texas Securities Act "imposes liability on [a] person who offers or sells a security. . . by means of an untrue statement of a material fact or an omission to state a material fact." *Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 485-86 (Tex. 2005) (internal citations omitted). "An omission or misrepresentation is material if there is a substantial likelihood that proper disclosure would have been viewed by a reasonable investor as significantly altering the total mix of information made available." *Duperier v. Texas State Bank*, 28 S.W.3d 740, 745 (Tex. App.–Corpus Christi 2000, no pet.). "In other words, the issue is whether a reasonable investor would consider the information important in deciding whether to invest." *Id.* In order to show that the purchase was consummated by means of untrue statements, the "plaintiff must show [that] the untrue statements were made before the sale occurred." *Pitman v. Lightfoot*, 937 S.W.2d 496, 531 (Tex. App.–San Antonio 1996, writ denied). Under Article 581–33F(1) of the Texas Securities Act, "[a] person who directly or indirectly controls a seller or issuer of a security is liable jointly and severally under Section 33A with the seller or issuer and to the same extent as the seller or issuer." *Busse v. Pac. Cattle Feeding Fund*, 896 S.W.2d 807, 814-815 (Tex. App.–Texarkana 1995, writ denied) ("Major shareholders . . . and directors . . . are control persons.").

Federal pleading standards, including Rule 9(b), apply to claims premised on the Texas Securities Act if the claims are asserted in federal court. *Billitteri v. Sec. Am., Inc.*, No. 3:09-CV-1568-F, 2010 WL 6785484, at *5 (N.D. Tex. July 26, 2010) ("[a] plaintiff alleging a violation of 'Texas securities fraud under the TSA,' that is, a violation of article [581-33] of the TSA, must satisfy the heightened pleading requirements of Rule 9(b), but need not plead scienter") (*citing Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 344 (5th Cir. 2008)); *see also Melder v. Morris*, 27

8

F.3d 1097, 1100 (5th Cir. 1994) ("Rule 9(b) requires certain minimum allegations in a securities fraud case, namely the specific time, place, and contents of the false representations, along with the identity of the person making the misrepresentations and what the person obtained thereby."). Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity.[4] *See* Fed. R. Civ. P. 9(b); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). Articulating the elements of fraud with particularity "requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams*, 112 F.3d at 179). However, the amount of particularity required for pleading fraud differs from case to case. *See id*. "A complaint can be long-winded, even prolix, without pleading with particularity . . . [i]ndeed, such a garrulous style is not an uncommon mask for an absence of detail." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (citing *Williams*, 112 F.3d at 178).

   1.   *Who*

Plaintiffs' petition does not identify any misrepresentation or omission made specifically by any PTX representative, Plano Capital representative, or Harvey. (*See* doc. 1-3 at 174-210.) It instead

---

[4] Federal Rule of Civil Procedure 9(b) states:

**(b) Fraud or Mistake; Conditions of Mind**. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).

9

globally alleges that "Defendants disseminated to Plaintiffs offering documents, including the 3 Well PPM and the 3 Well 2014 PPM, containing the . . . untrue statements of material facts and/or omissions of material facts, and reiterated to Plaintiffs the same, in meetings, communications, at investor events, dinners, and sales presentations." (*Id*. at 190.) It also alleges that "[t]he Broker-Dealer Defendants' [sic] marketed and promoted the 3 Well Program by holding in-person sales presentations and meeting, attended by the Broker-Dealer Defendants' representatives, where offering materials, including the 3 Well PPM and the 3 Well 2014 PPM, were provided to investors." (*Id*. at 203.)

Allegations that "lump all defendants together, failing to segregate the alleged wrongdoing of one from those of another," do not satisfy the requirements of Rule 9(b). *USA ex rel. Barrett v. Johnson Controls, Inc.*, No. 3:01-CV-1641-M, 2003 WL 21500400, at *10 (N.D. Tex. Apr. 9, 2003). Plaintiffs argue, however, that the "who" allegations in their petition are sufficient under Rule 9(b) because "[r]equiring Plaintiffs to separately allege each specific defendant who purportedly provided the offering materials, would result in redundant allegations" and, instead, Defendants can be "lumped together" because they all "engaged in precisely the same conduct" of offering, soliciting, and selling units in the 3 Well Program. (doc. 30 at 17-19 (citing *United States ex rel. Ramsey-Ledesma*, 2016 WL 5661644, at *9; *SEC v. Couch*, No. 3:14-CV-1747-D, 2014 WL 7404127, at *5 (N.D. Tex. Dec. 31, 2014))). They point to how their petition "separately identifies each Defendants' [sic] role in the offering" where it explains that PTX was the "Managing Broker Dealer for the units offered and sold in the 3 Well Program and was a co-seller of the Broker-Dealer Defendants in selling units to Plaintiffs," and how PTX arranged for the sale of the units on a "best efforts" basis. (*Id*. at 17 (citing doc. 1-3 at 180, 200.)) The petition further identifies Plano Capital as the "parent company of Defendant PTX since July 2012," and Harvey as the "President of Defendant PTX since September

10

2012." (doc. 1-3 at 180.)

Unlike the cases that Plaintiffs cite, the context of the allegations against the PTX Defendants require additional specificity to satisfy Rule 9(b). *See Williams*, 112 F.3d at 178 (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context specific"). The petition names thirteen separate defendants, including the managing general partner of the 3 Well Program, the owner of Payson, four brokerage firms, the parent companies for each of those firms, and several of the "control persons" for each of those brokerage firms. (doc. 1-3 at 174.) The petition then vaguely alleges that all Defendants, including all four of the Broker-Dealer Defendants, "disseminated" offering documents without any particularity as to who created or made the specific misrepresentations/omissions. (*Id.* at 178, 189); *see In re Urcarco Sec. Litig.*, 148 F.R.D. 561, 569 (N.D. Tex. 1993), *aff'd sub nom. Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994) (finding that the plaintiff's "lumping together" of the "thirteen named defendants, three of which are supposed to represent a defendant class of fifty firms" simply as "defendants" failed to "segregate the alleged wrongdoing of one from those of another do not meet the requirements of Rule 9(b)"). This is particularly deficient as to the PTX Defendants because they are alleged as having only "sold 8 units in the 3 Well Program for approximately \$210,600.00," and one of the named Plaintiffs, David Vednor, allegedly bought 4 of the 8 units that PTX sold in the offerings.[5] (doc. 1-3 at 180, 184.) Under this context, it is not "redundant" or "overly repetitive" for Plaintiffs to provide additional allegations specifying who from the PTX Defendants made the misrepresentations. *Compare, e.g., United States ex rel. Ramsey-Ledesma*, 2016 WL 5661644, at *4 (a *qui tam* action allowing global allegations

---

[5] Plaintiffs allege that EDI "sold 231.31 units for approximately \$6.15 million," Financial West "sold 337.60 units for approximately \$9.25 million" and MidAmerica "sold 49.73 units for approximately \$1.3 million." (doc. 1-3 at 181-82.)

11

brought under the False Claims Act (FCA) but noting that "the standard for stating a claim for relief with particularity is lower in the FCA context than it is in the securities or common law fraud contexts"); *SEC*, 2014 WL 7404127, at *5 (finding sufficient particularity when global allegations were made because the one entity defendant, COG, was a corporation controlled by the one individual defendant, who was "COG's owner, principal, director, president, CEO and control person," because COG could only act through the individual defendant officer, "[l]umping defendants' conduct together in this context is sufficiently specific to satisfy Rule 9(b)"). There is, additionally, a complete lack of particularity as to the identity of the specific PTX Defendants who "reiterated to Plaintiffs [the misrepresentations] in meetings, communications, at investor events, dinners, and sales presentations." (doc. 1-3 at 178.)

Though Plaintiffs identify PTX as the "managing broker dealer" in the offerings, globally alleging that all "Defendants" or all of the "Broker-Dealer Defendants" made the misrepresentations/omissions does not give the PTX Defendants fair notice of the allegations against them. *See Ricupito v. Indianapolis Life Ins. Co.*, No. 3:09-CV-2389-B, 2010 WL 3855293, at *4 (N.D. Tex. Sept. 30, 2010) (requiring the plaintiffs to identify the corporate agents who allegedly made false statements, because the complaint "strongly implies that the parties communicated in-person on multiple occasions" and the plaintiffs presumably knew the identities of the speakers).

  **2.**  *Where and When*

Plaintiffs' petition addresses "where" the misrepresentations/omissions were made by alleging that they were made at "meetings, communications at investor events, dinners, and sales presentations" that occurred in "all U.S. States," including events in Texas. (doc. 103 at 189-90, 202-03.) The petition does not identify any date as to "when" the alleged misrepresentations or omissions

12

were made at these events, other than the nine month period between October 23, 2013, and June 30, 2014, when the offerings were open to investors. (*Id.* at 175.)

Plaintiffs argue that these broad allegations are sufficiently pleaded because "punctilious pleading detail is not required" in order to comply with Rule 9(b) and that "where fraud occurred over an extended period of time and consists of numerous acts, the specificity requirements of Rule 9(b) are applied less stringently." (doc. 30 at 19-20) (citing *Atl. Cas. Ins. Co. v. Primelending, A Plainscapital Co.*, No. 3:15-CV-1475-D, 2016 WL 1322235, at *3 (N.D. Tex. Apr. 5, 2016); *U.S. ex rel. King v. Alcon Labs., Inc.*, 232 F.R.D. 568, 570-72 (N.D. Tex. 2005)). The petition, however, wholly fails to elaborate on when the events occurred–including which events occurred during the first phase or second phase of the offering–and vaguely states that it was a "nationwide campaign" that occurred in all of the states. (doc. 1-3 at 190, 202-03.) In the context of this suit, Plaintiffs' petition is insufficient because it includes only generalized time frames and expansive locations alleged globally against all Defendants without any specificity regarding the dates and events. *See U.S. ex rel. King*, 232 F.R.D. at 570-72 (dismissing fraud claim under Rule 9(b) because the plaintiff "fail[ed] to identify a single specific date on which a false claim was made and, instead, claims that the fraudulent activity occurred on or before January 1, 1998, to present"). Plaintiffs' petition fails to provide fair notice of the "where" and "when" of the claims against the PTX Defendants. *See Siragusa v. Arnold*, No. 3:12-CV-4497-M, 2014 WL 3512988, at *5 (N.D. Tex. July 16, 2014) (dismissing fraud and fraudulent inducement claims under Rule 9(b) because of Plaintiff's failure to allege when or where misleading statements were made); *see also Atl. Cas. Ins. Co.*, 2016 WL 1322235, at *4 (dismissing claim under Rule 9(b) because "[a]lthough [the plaintiff] alleges that misrepresentations were made, it does not specify any of the other particulars that Rule 9(b) requires, such as when the representations

13

were made, where the representations were made, or the specific identity of the person making the representations").

### 3. *How*

Plaintiffs' petition explains "how" the Defendants made the misrepresentations/omissions by alleging that they conducted a "nationwide campaign" where they "solicited Plaintiffs by e-mailing and mailing them offering materials" for the 3 Well Program, and they also "made unsolicited telephone calls" to Plaintiffs for the purpose of selling units in the 3 Well Program. (doc. 1-3 at 203.) It further alleges that the offering documents were "disseminated" at meetings, investor events, dinners, and sale presentations. (*Id.* at 202-03.)

Even assuming that Plaintiffs' allegations are sufficiently pleaded regarding "how" the misrepresentations/omissions were made, the lack of information of exactly who made them or when and where they were made fails to state a claim with the sufficient particularity required under Rule 9(b). *See DT Apartment Grp., L P v. CW Capital, LLC*, No. 3:12-CV-0437-D, 2012 WL 6693192, at *7 (N.D. Tex. Dec. 26, 2012) (dismissing collective allegations under Rule 9(b) because the complaint failed to plead specifically that "any particular defendant misrepresented any material fact," and omitted the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation"). Plaintiffs' petition fails to sufficiently state claims under the Texas Securities Act with particularity against the PTX Defendants.[6]

## III. REQUEST FOR LEAVE TO AMEND

In the conclusion section of their response, Plaintiffs simply state that "[i]f this Court

---

[6] Because it is recommended that all of the claims against the PTX Defendants be dismissed for failure to comply with Rule 9(b), their alternative argument that Plaintiffs' claims should be dismissed because they failed to "plead factual support for scienter or intent" need not be considered. (doc. 20 at 6-7.)

14

determines that any part of the Petition should be dismissed, [they] respectfully request leave to amend to address any pleading deficiencies identified by the Court." (doc. 30 at 29.) They do not identify any additional facts that they want to include in a third amended complaint, and they also fail to attach a proposed amended pleading as an exhibit. (*See id.*) Their request does not comply with Local Rule 15.1 of the Local Civil Rules for the Northern District of Texas, which provides that when a party files a motion for leave to file an amended pleading, the party must attach the proposed amended pleading as an exhibit. Compliance with the rules of procedure is required of all parties, and leave to amend may be denied for non-compliance. *Shabazz v. Franklin*, 380 F. Supp. 2d 793, 798 (N.D. Tex. 2005) (accepting recommendation). Plaintiffs' request is **DENIED without prejudice** to filing a motion that complies with the applicable rules of civil procedure and the local rules.

## IV. RECOMMENDATION

PTX Defendants' motion to dismiss should be **GRANTED**, and all of Plaintiffs' claims[7] against PTX, Plano Capital, and Harvey should be **DISMISSED with prejudice.**

**SO RECOMMENDED** on this 22nd day of January, 2018.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[7] Because Plaintiffs' "Count II" claims against Plano Capital and Harvey under Article 581-33F(1) is premised upon the primary violation under Article 581-33A(2), these claims should also be dismissed because Plaintiffs have not adequately alleged a violation of Article 581-33A(2) against PTX. *See* Tex. Rev. Civ. Stat. Ann. Art. 581-33; *see Darocy v. Abildtrup*, 345 S.W.3d 129, 136 (Tex. App.–Dallas 2011, no pet.) (explaining that "control person" liability is derivative of another entity's securities violations, and accordingly, "before a party . . . can be held secondarily liable, there must first be a primary violation").

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

    A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE