**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **TIM MOORE, et al.,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **No. 3:17-CV-1436-M-BH** |
| | ) | |
| **PAYSON PETROLEUM** | ) | |
| **GRAYSON, LLC, et al.,** | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM ORDER AND OPINION</u>

By *Special Order No. 3-251*, this *pro se* case has been automatically referred for full case management, including the determination of non-dispositive motions and the issuance of findings, conclusions, and recommendations on dispositive motions. Before the Court for determination is *Plaintiffs' Motion to Transfer Venue*, filed July 26, 2017 (doc. 32). Based on the relevant filings, evidence, and applicable law, the motion is **DENIED.**

## I. BACKGROUND

This lawsuit arises from a two-phase offering to invest in two Texas limited partnerships to fund the drilling, completion, and operation of two vertical wells and one horizontal well (3 Well Program) owned by Payson Petroleum, Inc.[1] (Payson), in Grayson County, Texas. (doc. 1-3 at 175-76.)[2]  The first phase offered 1,000 units at a cost of $27,000.00 per unit for the Payson Petroleum 3 Well, L.P. (3 Well), commencing on October 23, 2013, through December 31, 2013. (*Id.* at 175, 200.) Because only 277.65 units were sold, a second offering phase for the remaining 722.35 units of Payson Petroleum 3 Well 2014, L.P. (3 Well 2014), commenced on January 12, 2014, through

---

[1] Payson is not identified as a defendant in this suit. (*see* doc. 1-3 at 174.)

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of ea ch filing.

June 30, 2014. (*Id*.) The two offerings in the 3 Well Program raised $23 million in total. (*Id*. at 200.) A private placement memorandum (PPM) was issued for each offering, which included statements on how Payson would be funding 20% of the 3 Well Program:

> (1) Payson agreed to purchase 200 units in the 3 Well Program for $5.4 million; (2) in no event will Payson not purchase at least 100 units in the 3 Well Program; (3) Payson's $5.4 million capital infusion would fund 20% of the cost of the 3 Well Program; and (4) the "estimated" cost to drill and complete the wells by Payson was approximately $24 million.

(*Id*. at 175-77.)

The two offerings in the 3 Well Program successfully raised $23 million in total from approximately 150 investors. (*Id*. at 200.) Payson, however, failed to purchase 200 units or fund 20% of the 3 Well Program; as it was later discovered, it never had the financial capacity to do so. (*Id*. at 196.) The 3 Well Program was abandoned, and none of the investors received back any portion of the $23 million that was raised in the offerings. (*Id*. at 178.)

## A.    <u>SEC Civil Action</u>

On November 23, 2016, the Securities and Exchange Commission (SEC) filed a civil action in the Sherman Division of the Eastern District of Texas against Payson's owner, Matthew Carl Griffin (Griffin),[3] for violations of antifraud provisions in the Securities Act of 1933 and the Securities Exchange Act of 1934 (collectively Federal Securities Acts) for false statements and omissions made in the PPMs during the solicitation of investors in the 3 Well Program. (*Id*. at 215); *see SEC v. Griffin et al.*, No. 4:16-CV-00902 (E.D. Tex. Nov 23, 2016). The SEC complaint states that Griffin "had ultimate authority over the [misrepresentations made in] the PPMs and whether and how to communicate those contents" and that "[t]he brokers selling the 3 Well Program were also

---

[3] The SEC action also named and alleged the same facts against Griffin's brother, William Daniel Griffin, as the Chief Administrative Officer of Payson, but he is not named as a party in this suit. (doc. 1-3 at 218.)

misled [by Griffin because he] . . . wrote checks on Payson's bank account, totaling $4.36 million, to the limited partnerships, but funded those checks almost entirely with the investors' own money" making it appear "to the chief compliance officer of the managing seller of the 3 Well Program . . . that Payson had made its financial contribution to the 3 Well Program with its own funds."[4] (doc. 1-3 at 220-21, 224.)

The SEC complaint was filed contemporaneously with an "Unopposed Motion to Enter Interlocutory Judgments" that explained how Griffin had already executed a consent agreement with the SEC before the civil action was filed, in which he consented to an injunction against future violations and to pay disgorgement and penalties as determined by the court at a later time upon the SEC's motion.[5] (doc. 46-1.) On December 30, 2016, Court entered a four-page "Interlocutory Judgment as to Defendant Matthew Carl Griffin" that enjoined him from violating Section 17(a) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934. (doc. 1-3 at 238-41.) It noted that Griffin "consented to entry of this Interlocutory Judgment . . . [and] waived findings of facts and conclusions of law." (*Id*. at 1.) The only remaining issue in the SEC case is the amount of penalty and disgorgement.

## B.    Dallas Suit

On February 22, 2017, a group of seven investors[6] in the 3 Well Program (Plaintiffs) filed

---

[4] Copies of the SEC complaint and Griffin's consent to the entry of judgment in that action were attached as exhibits to the petition. (doc. 1-3 at 215-36.)

[5] Two of the named defendants requested that this Court take judicial notice pursuant to Rule 201(b) of the Federal Rules of Evidence of the "Unopposed Motion to Enter Interlocutory Judgments" filed in the SEC prosecution against Griffin. (doc. 45.) As a public record, this document will be judicially noticed. *See Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007) ("A court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings").

[6] The seven investors are identified as Tim Moore, David Vednor, Roland Lentz, James Rosemeyer, Virginia Humphrey, William Martin, and Jeff Wilshire. (*See* doc. 1-3 at 174-210.)

this class action suit in the 162nd District Court of Dallas County, Texas, alleging violations of the Texas Securities Act against Griffin and twelve other defendants, including Payson Petroleum Grayson, LLC (Payson Grayson), PTX Securities, LLC (PTX), Dan Nichter (Nichter), EDI Financial, Inc. (EDI), Financial West Group (Financial West), MidAmerica Financial Services, Inc. (MidAmerica), Shaun Darnell Young (Young), S&M, Ltd. (S&M), Terry Dewayne Harvey (Harvey), Plano Capital Group, LLC (Plano Capital), Martin William Prinz (Prinz), and Gene Charles Valentine (Valentine) (collectively Defendants). (*See* doc. 1-3 at 23-57, 174-210.) Plaintiffs divide the defendants into two groups: (1) the Broker-Dealer Defendants, defined as PTX, EDI, Financial West, and MidAmerica, are the entities who brokered the sales of the units in the 3 Well Program to the investors; and (2) the Control Person Defendants, defined as Griffin, Harvey, Plano Capital, S&M, and Young, are the entities and individuals who control the Broker-Dealer Defendants. (*Id*.at 183.) Payson Grayson is identified as the Managing General Partner of the 3 Well Program, and Nichter is identified as the Director of Client Relations at Payson. (*Id*. at 179-80.) On May 31, 2017, Financial West and Valentine removed this action to federal court asserting that this Court has original jurisdiction under the Class Action Fairness Act provisions of 28 U.S.C. § 1332(d)(2).[7] (doc. 1 at 3.)

Plaintiffs allege that Defendants "disseminated" the PPMs containing the "fraudulent" statements as to Payson's 20% contribution to the 3 Well Program to Plaintiffs and other investors, and they "reiterated to Plaintiffs the same, in meetings and communications, at investor events, dinners, and sales presentations, and by other marketing and promoting mechanisms, in order to solicit Plaintiffs' purchases of units in the 3 Well Program." (doc. 1-3 at 178.) They further allege

---

[7] Plaintiffs have not argued that removal is improper or that remand is necessary.

that Defendants also solicited Plaintiffs' purchases of units in the 3 Well Program by e-mails, mailings, webinar slides, and unsolicited telephone calls to Plaintiffs. (*Id*. at 194.) Defendants collectively made "an estimated $4,260,276.00 in sales commissions from selling units to Plaintiffs and Class Members." (*Id*. at 202.)

Specifically, Plaintiffs allege that the statements made in the two PPM offering documents are fraudulent and misleading because:

> (1) Payson never purchased a single unit and thereby contributed no money to the 3 Well Program; (2) consequently, Payson paid nothing towards its 20% share of the cost of the 3 Well Program; (3) Payson lacked the financial means to make the $5.4 million payment; (4) the true cost of drilling and completing the wells was $16-$18 million; (5) the "estimated" $24 million cost to drill and complete the wells was Payson's undisclosed fixed fee for drilling the wells, regardless of the actual drilling cost; and (6) Payson pocketed the difference between the $23 million raised in the two integrated offerings and the actual drilling cost–$16-$18 million. (*Id*. at 177.)

Plaintiffs further allege that they were never informed that "Payson had a secret 'turn-key' agreement with the limited partnerships whereby Payson would retain as its putative drilling fee, $24 million net of actual well costs of the projected $27 million raised in the offering." (*Id*. at 178.) They contend that these misrepresentations and omissions were made so that Payson could "fleece investors by unlawfully pocketing the difference between the false $24 million estimate and the wells actual cost." (doc. 30 at 8.)

In Count I of their petition, Plaintiffs claim that "All Defendants" are liable pursuant to Article 581-33A(2) of the Texas Securities Act "by offering, soliciting, and/or selling units the 3 Well Program to Plaintiffs and Class Members by means of untrue statement of material facts and/or omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading." (doc. 1-3 at 206-07.) In Count II, Plaintiffs further allege that the Control Person Defendants are jointly and severally liable under

Article 581-33F(1) of the Texas Securities Act as the "senior officers, directors, significant shareholders, or have indirect control over" the Broker-Dealer Defendants. (*Id*.) Plaintiffs seek monetary relief in an amount over $1,000,000.00, exemplary damages, and attorney fees. (*Id*. at 208.)

Shortly after this case was removed to federal court, Plaintiffs moved to transfer all proceedings to the Sherman Division of the Eastern District of Texas under 28 U.S.C. § 1404(a). (doc. 32.) With a timely filed response and reply, this motion is ripe for determination. (docs. 42, 43, 44, 59, 60, 61.)

## II. § 1404(a)

Plaintiffs argue that all of the applicable factors weigh in favor of transfer to the Sherman Division because the district judge there is "best positioned to handle this action because he is already familiar with the central facts and issues underlying Plaintiffs' allegations." (doc. 33 at 7-8.)

A district court may transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it may have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). As a threshold matter, § 1404(a) requires a determination of whether the proposed transferee district is one in which the suit might have been brought. *In re Horsehoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003) (per curiam). Once this threshold has been met, § 1404(a) requires consideration of "the convenience of the parties and witnesses" and "the interests of justice." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (Volkswagen I); *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) (Volkswagen II). The movant must show that considering both the convenience of the parties and witnesses and the interest of justice under § 1404(a), the transferee venue is "clearly more

convenient." *Volkswagen II*, 545 F.3d at 315. The determination of venue transfer pursuant to §

1404(a) is within the trial court's sound discretion, exercised "in light of the particular circumstances

of the case." *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001) (citing *Jarvis*

*Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988)).

When, as here, the plaintiff is the movant seeking a § 1404(a) transfer, courts have explained

that "the burden should be at least as heavy on a plaintiff who seeks to change the forum that he or

she had selected as it is when the defendant is the moving party," although, "[a]t the same time, as

with all Section 1404(a) determinations, the particular circumstances surrounding the transfer

motion must be considered." *Ross Neely Sys., Inc. v. Navistar, Inc.*, No. 3:13-CV-1587-M-BN, 2015

WL 1822837, at *5 (N.D. Tex. Apr. 22, 2015) (citing *United Galvanizing, Inc. v. Imperial Zinc*

*Corp.*, No. H–08–0551, 2010 WL 4393990, at *3 (S.D. Tex. Oct. 29, 2010)).

## A.     Proposed Transferee District

Plaintiffs argue that this action could have been filed in the Sherman Division of the Eastern

District of Texas because a substantial part of the events or omissions giving rise to their claims

occurred there. (doc. 33 at 13.) Financial West and Valentine respond that Plaintiffs have failed to

show a "substantial connection" with the Sherman Division.[8] (doc. 44 at 12.)

> For all civil actions brought in a United States district court, venue is proper in:
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the
> State in which the district is located; (2) a judicial district in which a substantial part of the
> events or omissions giving rise to the claim occurred, or a substantial part of property that
> is the subject of the action is situated; or (3) if there is no district in which an action may
> otherwise be brought as provided in this section, any judicial district in which any defendant
> is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). The "substantiality" requirement under § 1391(b)(2) "is more a qualitative

---

[8] None of the other Defendants expressly challenge whether venue is proper in the Sherman Division. (*See* docs. 42,
43.)

than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013) (citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432-33 (2d Cir. 2005)). Venue in a particular suit "may be properly laid in more than one district," and the "substantial part of the events or omissions test does not require that the chosen venue be the best venue . . . the selected district must simply have a substantial connection to the claim." *Id.* at 722-23 (citations omitted). Section 1391(b)(2) "requires only that the contacts with the district be substantial, not that 'the most relevant events took place' there." *JetPay Merch. Servs., LLC v. Chartis Specialty Ins. Co.*, No. 3:13-CV-0401-M, 2013 WL 3387517, at *2 (N.D. Tex. July 8, 2013) (quoting *Emelike v. L–3 Commc'ns Corp.*, No. 3:12-CV-2470, 2013 WL 1890289, at *3 (N.D. Tex. May 7, 2013)).

Here, Plaintiffs note that six of the Defendants "all operated within the Sherman Division,"[9] and how the underlying limited partnerships in the 3 Well Program, including the three oil wells themselves, are all located in the counties contained within the Sherman Division. (doc. 33 at 13-14.) They also allege that several of them and other investors were solicited and given tours of the oil wells while in the Sherman Division. (*Id.* at 14.) Although the petition also alleges that much of the solicitation occurred outside the Sherman Division, Plaintiffs have sufficiently shown that a "substantial part of the events or omissions giving rise to the claim" occurred there, and venue is proper in the Sherman Division of the Eastern District of Texas. *See Zurich Am. Ins. Co.*, 982 F. Supp. 2d at 722-23 (finding that the fact that "three of the nine construction projections were located

---

[9] This includes PTX, Harvey, Plano Capital, Payson Grayson, Griffin, and Nichter. (doc. 33 at 13.)

in the Western District of Texas is sufficient to satisfy the substantiality requirement of § 1391(b)(2)"); *see JetPay Merch. Servs., LLC*, 2013 WL 3387517, at *2 (finding that venue was proper under § 1391(b)(2) in the Southern District of New York because the underlying policy was "negotiated in, and issued from, the Southern District of New York" and because the defendant "also received, processed, and made the decision to deny [the plaintiff's] claim in the Southern District of New York"); *see also Bigham v. Envirocare of Utah, Inc*., 123 F. Supp. 2d 1046, 1048-49 (S.D. Tex. 2000) (noting that even though "the overwhelming majority of [the defendants'] allegedly wrongful actions occurred outside the Southern District of Texas, the Court cannot hold that the events that did purportedly happen here [in the Southern District of Texas] are not substantial").

## B. Convenience to Parties and Witnesses

Because the proposed transferee district is one in which the suit may have been brought, the next consideration is "the convenience of the parties and witnesses." *Volkswagen I*, 371 F.3d at 203; *Volkswagen II,* 545 F.3d at 315. The Fifth Circuit has adopted the *forum non conveniens* private and public interest factors to determine the convenience of the parties and witnesses. *Volkswagen II*, 545 F.3d at 314-15, n.9 (5th Cir. 2008); *see also Volkswagen I*, 371 F.3d at 203.

### 1. Private Interest Factors

The private interest factors consist of "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Hartzell Propeller, Inc.,* 454 U.S. 235, 241 n.6 (1981)).

### a. Relative Ease of Access to Sources of Proof

The first private interest factor weighs in favor of transfer when evidence can be more readily accessed from the transferee district. *Internet Machines LLC v. Alienware Corp.*, No. 6:10–CV–023, 2011 WL 2292961, at \*5 (E.D. Tex. June 7, 2011). Here, Plaintiffs generally argue that the "ease of access to sources of proof is relatively easier in the Sherman Division than the Dallas Division" because the oil and gas wells are located in the Sherman Division and because PTX, Harvey, Plano Capital, Payson Grayson, Griffin, Payson and Nichter all "reside and operate" within the Sherman Division. (doc. 33 at 17.) They, however, fail to describe or explain any "specific [evidence] that will be more accessible" or will be used if the case is transferred to the Sherman Division. *Bedrock Logistics, LLC v. Braintree Labs., Inc.*, No. 3:16-CV-2815-M, 2017 WL 1547013, at \*2 (N.D. Tex. Apr. 28, 2017). Because no specific evidence has been identified, Plaintiffs have failed to establish that this factor weighs in favor of transfer, and it is neutral at best. *See id.* (finding this factor to be neutral because "neither party describes specific documents that will be more accessible if the case is tried in Texas instead of Massachusetts"); *see SEC v. Blackburn*, No. 4:14-CV-812-LG-CMC, 2015 WL 11120724, at \*2 (E.D. Tex. June 30, 2015) (finding this factor to be neutral because there was "little dispute that most of the relevant documents in this action are available or are capable of being produced electronically").

### b. Availability of Compulsory Process

The second private interest factor, the availability of compulsory process to secure the attendance of witnesses, favors transfer when a transferee district has absolute subpoena power over a greater number of non-party witnesses. *Internet Machines*, 2011 WL 2292961, at \*6 (citing *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009)). A district "may command a

person to attend trial" by subpoena when it is "within 100 miles of where the person resides, [or] is employed . . . ." Fed. R. Civ. P. 45 (c)(1)(a). "'[T]he moving party must do more than make a general allegation that certain key witnesses are needed,' and must 'specifically identify the key witnesses and outline the substance of their testimony.'" *Pension Advisory Group, Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 710 (S.D. Tex. 2011) (quoting *Hupp v. Siroflex of America, Inc.*, 848 F. Supp. 744, 749 (S.D. Tex. 1994)).

Here, Plaintiffs argue that the Sherman Division will be able to "compel the attendance of witnesses including present and former officers, directors, employees, and agents" of PTX, Harvey, Plano Capital, Payson Grayson, Griffin, Payson, and Nichter. (doc. 33 at 18.) They, however, fail to identify whether these individuals are outside the subpoena power of the Dallas Division. (*Id.*) In fact, it appears that all of these potential witnesses would be subject to compulsory process in both the Sherman Division and Dallas Division; the two courthouses are approximately 60 miles apart. *See* Fed. R. Civ. P. 45(c)(1)(a) (a district's compulsory process by subpoena extends to "within 100 miles of where the person resides, [or] is employed"). Plaintiffs, moreover, fail to outline the substance of the testimony of the key witnesses. *See Pension Advisory Group*, 771 F. Supp. 2d at 710 ("the moving party must do more than make a general allegation that certain key witnesses are needed, and must specifically identify the key witnesses and outline the substance of their testimony") (citation and internal quotations omitted). Accordingly, the second private factor does not weigh in favor of transfer and is neutral at best. *See TGI Friday's, Inc. v. Great Northwest Restaurants, Inc.,* 652 F. Supp. 2d 750, 762 (N.D. Tex. 2009) (finding that because each party's potential witnesses reside in or near that party's forum of choice, this factor was neutral).

### c.    Cost of Attendance of Willing Witnesses

The third private interest factor is the cost of attendance for willing witnesses. *Volkswagen I*, 371 F.3d at 203. "The Court must consider the convenience of both the party and non-party witnesses." *Vargas v. Seamar Divers Int'l, LLC,* No. 2:10-CV-178-TJW, 2011 WL 1980001, at *7 (E.D. Tex. May 20, 2011) (citing *Volkswagen I*, 371 F.3d at 204). The Fifth Circuit employs a 100-mile rule to assess the third private interest factor of cost of attendance for willing witnesses. *Volkswagen I*, 371 F.3d at 204-205. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travels time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.* at 205.

Here, Plaintiffs argue that transferring this case to the Sherman Division will result in lower travel costs for "all potential witnesses," including the "present and former officers, director, employees, and agents" of PTX, Harvey, Plano Capital, Payson Grayson, Griffin, Payson, and Nichter because they all operate within the counties encompassed by the Sherman Division. (doc. 33 at 18.) PTX, Harvey, and Plano Capital all point out that those same defendants are actually located closer to the Dallas courthouse than to the Sherman courthouse.[10] (doc. 43 at 14.) Plaintiffs appear to have used the address to the Plano courthouse at 7940 Preston Road Plano, Texas, and not

---

[10] The Defendants who "operate or reside" in the Sherman Division are located either in the city of Plano, Bartonville, Denton, or Flower Mound, Texas. (doc. 61 at 9.) These cities are approximately 45 miles, 70 miles, 35 miles, and 65 miles away from the Sherman courthouse, respectively, while they are approximately only 20 miles, 40 miles, 45 miles, and 40 miles away from the Dallas courthouse.

the proper address of the Sherman courthouse located at 101 East Pecan Street Sherman, Texas.[11]

(doc. 61 at 9 n.7.) They fail to elaborate as to why the district judge would hear this particular civil

suit in a location other than the courthouse in which his chambers and staff are located. They also

again fail to "specifically identify the key witnesses and outline the substance of their testimony."

*Pension Advisory Group, Ltd.*, 771 F. Supp. 2d at 710.

The Dallas Division is also much closer to a major international airport than the Sherman

Division is, which is more convenient for any witnesses and parties from out-of-state.[12] Plaintiffs

have failed to identify any specific witness who would save costs if this suit is transferred to the

Sherman Division, and this factor weighs in favor of denying transfer. *See Dupre v. Spanier Marine

Corp.*, 810 F. Supp. 823, 829 (S.D. Tex. 1993) (explaining that "[c]rucial to the Court's decision [to

deny a motion to transfer venue] is that the most important factor, the availability and convenience

of the parties and witnesses, would not be significantly improved by a transfer").

### d.    Other Practical Problems

The fourth private interest factor is a catch-all consideration that includes all other problems

that obstruct easy, expeditious, and inexpensive trials. Plaintiffs argue that "transferring this action

to the Sherman Division will serve the interest of judicial efficiency, by preserving judicial

resources," and they contend that they could seek a dismissal without prejudice if their motion is

denied, and then institute this same action in the Sherman Division. (doc. 33 at 19.) They do not

specifically outline the "other practical problems," however, and their arguments regarding judicial

---

[11] The district judge presiding over the SEC action maintains his chambers and presides over trials at the Sherman courthouse, not at the Plano courthouse. *See* http://www.txed.uscourts.gov/?q=judge/district-judge-amos-mazzant-iii, last visited Jan. 17, 2018.

[12] The Dallas-Ft. Worth Airport is approximately 20 miles from the Dallas Division, while it is approximately 70 miles from the Sherman Division.

efficiency and resources are reiterations of their arguments on how transfer is proper due to the "interest of justice." *Highpoint Risk Servs. LLC v. Companion Prop. & Cas. Ins. Co.*, No. 3:14-CV-3398-L-BH, 2016 WL 4479511, at *14 (N.D. Tex. Aug. 25, 2016) (finding that the "potential for consolidation of this case and the South Carolina Action is not by itself a practical problem"). This factor is neutral as to transfer.[13]

### 2. Public Interest Factors

In addition to the private interest factors, courts must also consider the *forum non conveniens* public interest factors to see if they favor transfer. *Volkswagen I*, 371 F.3d at 203. They include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws [or in] the application of foreign law." *Id.*

### a. Court Congestion

The first public interest factor concerns the administrative difficulties flowing from court congestion. *See Volkswagen I*, 371 F.3d at 203. Plaintiffs note that "there are two judgeships vacant in the Dallas Division" and contend that this factor is "neutral or weighs in favor of transfer." (doc. 33 at 19.) They, however, fail to explain how the Sherman Division, which also has vacant judgeships, would result in a more speedy resolution of this suit. This factor is neutral as to transfer.

### b. Local Interest

The second public interest factor is the local interest in having localized interests decided at home. *Volkswagen I*, 371 F.3d at 203. This factor favors transfer if "the events giving rise to this

---

[13] Plaintiffs' arguments related to the "interest of justice" will be considered with that factor.

action occurred in [the transferee district/division] . . . ." *Volkswagen II*, 545 F.3d at 315. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 832-33 (N.D. Tex. 2013) (citations and quotation omitted).

Here, Plaintiffs argue that this factor weighs in favor of transfer because the allegations "arise out of activities that transpired in the Sherman Division," namely the 3 Well Program, and because the Sherman Division "has a strong interest in adjudicating this case as it involves harm to entities located within its district." (doc. 33 at 20.) While Plaintiffs' petition identifies activities that occurred in the Sherman Division, there are also allegations as to substantially more activities that did not occur in the Sherman Division. (*See* doc. 1-3 at 174-210.) It alleges that this suit is based primarily upon Defendants' representations to Plaintiffs and other investors at "investor events, dinners, and sales presentations" that occurred in "all U.S. states" during a "nationwide marketing campaign promoting the 3 Well Program." (*Id.* at 178, 202.) It appears that a substantial amount of events that gave rise to this suit, *i.e.* the solicitation of units in the 3 Well Program, occurred across many different locations and venues. *See H-W Tech., L.C. v. Domino's Pizza LLC*, No. 3:13-CV-1922-G-BH, 2013 WL 6333438, at *6 (N.D. Tex. Dec. 5, 2013) (noting that "where the accused products are sold throughout the United States, the citizens of the forum where the suit is brought have no more or less of a meaningful connection to the case than any other venue"). Plaintiffs' general assertions have failed to establish that this factor weighs in favor of transfer, and it instead appears neutral. *See Pension Advisory Group*, 771 F. Supp. 2d at 711 (finding that in a case with Texas residents against non-Texas residents involving business interactions between the parties, both the Texas forum and the non-Texas forum had a significant interest in the matter).

### c.    Familiarity with the Governing Law

The third public interest factor is "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. Plaintiffs argue that this factor weighs in favor of transfer because the judge in the Sherman Division has "already invested time and energy in adjudicating the SEC action, and is therefore already familiar with the central facts and issues underlying Plaintiffs' allegations." (doc. 33 at 21.) Though the SEC action against Griffin is pending in the Sherman Division, Plaintiffs do not show how this fact makes that division any more familiar with the governing law and claims under the Texas Securities Act against an additional twelve defendants.[14] Both the Dallas Division and the Sherman Division are equally familiar with the governing state law in this case, so this factor is neutral as to transfer.

### d.    Avoidance of Conflict of Laws

The fourth public interest factor is "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen I*, 371 F.3d at 203. The parties agree that this factor is neutral because a transfer "would not present a conflict of law or require the application of foreign law." (docs. 33 at 22, 42 at 8, 43 at 19, 44 at 18.)

Because none of the private and public factors support transfer to the Sherman Division, Plaintiffs have failed to carry their burden to show that transfer is "clearly more convenient" for the parties and witnesses.

## C.    <u>Interest of Justice</u>

Plaintiffs argue that transfer to the Sherman Division, where the SEC civil action against Griffin is pending, is in the interest of justice and "serves the interest of judicial efficiency" because

---

[14] Plaintiffs' arguments that are related to "judicial efficiency" and the "interest of justice" will be considered with that factor.

the judge is "already familiar with the central facts and issues underlying Plaintiffs' allegations." (doc. 33 at 14, 15-16.)

Courts must consider the "interest of justice" as a factor when determining whether a transfer of venue is proper under § 1404(a). *See Regents of Univ. Of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997). The "interest of justice" factor has been used by courts as a basis to "avoid multiplicity of litigation as a result of a single transaction or event." *BNSF Railway Co. v. OOCL(USA), Inc.*, 667 F. Supp. 2d 703, 713 (N.D. Tex. 2009) (citing *Seeberger Enters., Inc v. Mike Thompson Recreational Vehicles, Inc.*, 502 F. Supp. 2d 531, 541 (W.D. Tex. 2007)). "While not conclusive, . . . the fact that a related action is pending in another federal district court, should be considered when determining whether the suit in question should be transferred." *Sundance Leasing Co. v. Bingham*, 503 F. Supp. 139, 140-41 (N.D. Tex. 1980). Though the actions need not be identical or duplicative, it must be determined that "the two actions involve closely related questions or common subject matter, or that the core issues substantially overlap." *The Whistler Grp., Inc. v. PNI Corp.*, No. 3:03-CV-1536-G, 2003 WL 22939214, at *5 n.3 (N.D. Tex. Dec. 5, 2003) (citing *Texas Instruments*, 815 F. Supp. at 997).

While both this suit and the SEC action involve the 3 Well Program, they significantly differ in regard to the status of the litigation, the parties, and even some factual allegations. Although the SEC action is still pending, these two cases cannot be consolidated if transferred, and an interlocutory judgment has already been entered against Griffin with his consent, which leaves the amount of penalty/disgorgement as the only remaining issue in the SEC action. (doc. 1-3 at 238-41.) The current suit, however, is strongly contested, and this Court has already entered a scheduling order and reviewed a motion to dismiss filed by three of the Defendants. (docs. 20, 29.) Because this

Court has already completed a fact-intensive review of both the underlying allegations in this specific suit and the SEC action, it appears that this Court may possess more familiarity with the central facts underlying Plaintiffs' allegations than the familiarity that the Sherman Division judge acquired when he reviewed the uncontested motion for interlocutory judgment and entered the interlocutory judgment against Griffin over a one month period.

The two cases also significantly differ as to the parties. The current suit alleges security violations under Texas law against twelve defendants that are not formally identified or named as parties in the SEC case. (doc. 1-3 at 174, 215.) Plaintiffs, moreover, broaden the allegations made in the SEC action by contending that the twelve new defendants, in addition to Griffin, made misrepresentations and omissions to Plaintiffs via the PPMs during presentations and other communications during the nationwide campaign. (*Id*. at 178-94.) These allegations seem to be inconsistent with the SEC complaint, which states that Griffin "had ultimate authority over the [misrepresentations made in] the PPMs and whether and how to communicate those contents" and that "[t]he brokers selling the 3 Well Program were also misled [by Griffin because he] . . . wrote checks on Payson's bank account, totaling $4.36 million, to the limited partnerships, but funded those checks almost entirely with the investors' own money" making it appear "to the chief compliance officer of the managing seller of the 3 Well Program . . . that Payson had made its financial contribution to the 3 Well Program with its own funds." (*Id*. at 220-21, 224.)

The primary overlap between the two actions are the allegations against Griffin for his behavior during the 3 Well Program. (doc. 1-3 at 174, 215.) In this suit, however, Plaintiffs have still failed to file proof that Griffin has been served with a copy of their petition, and it is unclear if he will make an appearance. (*See* doc. 5.) Even assuming that Griffin does make an appearance and

contests liability, there does not appear to be a risk of inconsistent findings or litigation because both actions are based off of different securities laws and seek different types of damages. The SEC case is under the Federal Securities Acts and seeks a civil penalty and disgorgement,[15] while this current suit alleges claims under the Texas Securities Act as a private right of action seeking "damages sustained by Plaintiffs and the Class," exemplary damages, and rescission of the sale of securities.[16] (doc. 1-3 at 207-09, 238-41.) Plaintiffs have failed to show a "substantial overlap" between the two actions that warrants transfer, and there does not appear to be any risk of duplicative litigation or inconsistent results due to continuation of the present case in the Dallas Division. They have accordingly not established that transferring this case to the Sherman Division would serve the interest of judicial efficiency or is "clearly more convenient." *See Walker v. Inter-Americas Ins. Corp.*, No. 7:03-CV-222-R, 2004 WL 1620790, at *5 (N.D. Tex. July 19, 2004) (explaining that "[t]he proposed transferee forum must be a more convenient forum, not a forum likely to prove equally convenient or inconvenient as the transferor forum") (citing *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964)).

---

[15] Disgorgement, unlike other types of damages, "does not aim to compensate the victims of the wrongful acts . . . [meaning that] a disgorgement order might be for an amount more or less than that required to make the victims whole." *S.E.C. v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993). In actions brought by the SEC involving a securities violation, "disgorgement need only be a reasonable approximation of profits causally connected to the violation," however, "in a private action, the party seeking monetary compensation may have a greater burden to prove its claim to the amount requested." *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 413 (5th Cir. 2007) (citation omitted).

[16] Plaintiffs cite to *S.E.C. v. Halek*, 537 F. App'x 576, 579 (5th Cir. 2013), to argue that "establishing the amount of disgorgement may require findings of fact and law by the court, including adjudicating the extent of the Defendants' participation in the fraud." (doc. 61 at 8.) In *Halek*, the SEC brought a civil action against Halek and his two companies, and the district court found that all three of the defendants "had jointly participated in the profits, had commingled the funds, and had collectively spent the funds as a single economic unit," and they "were jointly and severally liable for disgorgement." *Id.* at 578-79. Unlike in *Halek*, the SEC action here only names Griffin and his brother as defendants, and there are no specific allegations in the SEC's complaint that any other individuals or entities should also be held liable for or even participated in the violations under the Federal Securities Act. (doc. 1-3 at 215-27.)

D.    **Plaintiffs' Choice of Forum**

While a plaintiff's original choice of forum "should be respected" unless "the transferee venue is clearly more convenient," it "is not an independent factor within . . . the § 1404(a) analysis." *Volkswagen II*, 545 F.3d at at 314 n.10, 315. A "plaintiff's choice of forum is 'highly esteemed,'" but this choice is "less significant where . . . the plaintiff originally filed suit in another district" because it "is one thing to give weight to plaintiff's initial choice of forum, but it seems odd that a plaintiff who has chosen an improper forum should have great weight given to [its] second choice." *DataTreasury Corp. v. First Data Corp*., 243 F. Supp. 2d 591, 594 (N.D. Tex. 2003) (quoting *N2 Consulting, LLC v. Engineered Fastener Co.*, No. 3:02-CV-308-BD, 2002 WL 31246770 at *2 (N.D. Tex. Oct. 2, 2002). Moreover, "[t]he preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right." *The Whistler Grp., Inc*., 2003 WL 22939214, at *6.

Here, Plaintiffs argue that they "were stripped of their choice of forum" when this suit was removed to federal court, and that their request to transfer venue "deserves the same high esteem and substantial deference as Plaintiffs' first choice of forum." (doc. 59 at 6.) They, however, do not cite to any authority that "substantial deference" is required or has been given in similar factual situations previously. (*See id.* at 5-8.) When this suit was originally filed in the state district court located in Dallas County, Plaintiffs were aware of the possibility that it would be removed to the federal court of the Dallas Division, which is located only a few blocks from the state courthouse. Now that this case was removed, they no longer wish to litigate in Dallas County because it is not "judicially efficient" or "convenient for the parties and witnesses." (doc. 61 at 3.) Under these facts, Plaintiffs' alternative choice of forum is not entitled to "substantial deference." *See Health*

*Discovery Corp. v. Ciphergen Biosystems, Inc.*, No. 2:06-CV-260-TJW, 2007 WL 128283, at *3 (E.D. Tex. Jan. 11, 2007) ("The plaintiff's second or third choices of forum receives no deference, especially when the events giving rise to this infringement action do not dominate in either the plaintiff's or the defendant's choices of forum."); *see Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438, 446-47 (E.D. Pa. 1999) (refusing to defer to a plaintiff's request for transfer post-removal because "[t]o hold otherwise would be to create the anomalous situation that a plaintiff's geographic choice is entitled to greater deference based on whether or not it sues in federal court first" and because the "statutory right of removal . . . cannot render the plaintiff's geographic choice entirely meaningless").[17]

Considering both the "convenience of parties and witnesses" and the interest of justice under § 1404(a), Plaintiffs have failed to carry their burden to show that the Sherman Division is "clearly more convenient." *Volkswagen II*, 545 F.3d at 315.[18]

### III. CONCLUSION

Plaintiffs' motion to transfer (doc. 32) is **DENIED.**

---

[17] Plaintiffs argue in their replies that Defendants and all of the cases they relied upon in their responses improperly "conflate" the "distinction between forum and venue." (docs. 59 at 5, 60 at 5, 61 at 2.) They, however, fail to show how any perceived error requires that "substantial deference" be extended to a plaintiff's post-removal request for transfer. *See Ross Neely Sys., Inc*, 2015 WL 1822837, at *5 ("the burden should be at least as heavy on a plaintiff who seeks to change the forum that he or she had selected as it is when the defendant is the moving party")

[18] Five of the Defendants argue that Plaintiffs must show "changed circumstances" in addition to the § 1404(a) factors in order to prevail on their motion to transfer. (docs. 44 at 8-9, 43 at 7-10.) Plaintiffs respond that the district courts, including those in this division, are not uniform in their requirement of "changed circumstances" for a plaintiff's motion to transfer venue, and, even if they must meet this requirement, the removal of this suit from state court meets this criteria because it was a "litigation event [that] took place that was beyond Plaintiffs' control." (docs. 61 at 4-6, 60 at 2-4); *see Ross Neely Sys., Inc.,* 2015 WL 1822837, at *7-11 (no requirement identified or finding made as to whether the plaintiff sufficiently showed a change of circumstances before requesting a transfer of venue); *see Moto Photo, Inc.*, 2003 WL 298799, at *3 (requiring the plaintiff to show a change in circumstances "in order to prevail" on a motion to transfer venue). Regardless of whether Plaintiffs must show "changed circumstances," their motion to transfer venue would still be denied because they have failed to meet their burden under § 1404(a) to show that the balance of convenience and justice weighs in favor of transferring this suit to the Sherman Division.

**SO ORDERED** on this 23rd day of January, 2018.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE