IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TIM MOORE, et al., ) | |
|     Plaintiffs, ) | |
| ) | |
| vs. ) | No. 3:17-CV-1436-S-BH |
| ) | |
| PAYSON PETROLEUM ) | |
| GRAYSON, LLC, et al., ) | |
|     Defendants. ) | Referred to U.S. Magistrate Judge |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By *Special Order No. 3-251*, this *pro se* case has been automatically referred for full case management. Before the Court for recommendation is *Plaintiffs' Motion for Default Judgment*, filed September 7, 2017 (doc. 54). Based upon the relevant filings and applicable law, the motion should be **DENIED**.

### I. BACKGROUND

On February 22, 2017, Tim Moore, David Vednor, Roland Lentz, James Rosemeyer, Virginia Humphrey, William Martin, and Jeff Wilshire (Plaintiffs) filed this class action suit alleging violations of the Texas Securities Act against thirteen defendants, including Payson Petroleum Grayson, LLC (Payson Grayson), Matthew Carl Griffin (Griffin), PTX Securities, LLC (PTX), Dan Nichter (Nichter), EDI Financial, Inc. (EDI), Financial West Group (Financial West), MidAmerica Financial Services, Inc. (MidAmerica), Shaun Darnell Young (Young), S&M, Ltd. (S&M), Terry Dewayne Harvey (Harvey), Plano Capital Group, LLC (Plano Capital), Martin William Prinz (Prinz), and Gene Charles Valentine (Valentine) (Defendants) in Texas state court. (*See* doc. 1-3 at 23-57, 174-210.)[1] On May 31, 2017, Financial West and Valentine removed this action to federal court, asserting

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

original jurisdiction under the Class Action Fairness Act provisions of 28 U.S.C. § 1332(d)(2). (doc. 1.)

At issue is a two-phase offering to invest in two Texas limited partnerships to fund the drilling, completion, and operation of two vertical wells and one horizontal well (3 Well Program) owned by Payson Petroleum, Inc.[2] (Payson), in Grayson County, Texas. (doc. 1-3 at 175-76.) The first phase offered 1,000 units at a cost of $27,000.00 per unit for the Payson Petroleum 3 Well, L.P. (3 Well), commencing on October 23, 2013, through December 31, 2013. (*Id*. at 175, 200.) Because only 277.65 units were sold, a second offering phase for the remaining 722.35 units of Payson Petroleum 3 Well 2014, L.P. (3 Well 2014), commenced on January 12, 2014, through June 30, 2014. (*Id*.) The two offerings in the 3 Well Program raised $23 million in total. (*Id*. at 200.) A private placement memorandum (PPM) was issued for each offering. (*Id*. at 175.)

Plaintiffs allege that the offering documents included statements on how:

> (1) Payson agreed to purchase 200 units in the 3 Well Program for $5.4 million; (2) in no event will Payson not purchase at least 100 units in the 3 Well Program; (3) Payson's $5.4 million capital infusion would fund 20% of the cost of the 3 Well Program; and (4) the "estimated" cost to drill and complete the wells by Payson was approximately $24 million.

(*Id*. at 176-77.) "Defendants" and "Broker-Dealer Defendants," identified as PTX, EDI, Financial West, and MidAmerica, allegedly "disseminated" these offering documents to Plaintiffs and other investors, and they "reiterated to Plaintiffs the same, in meetings and communications, at investor events, dinners, and sales presentations, and by other marketing and promoting mechanisms, in order to solicit Plaintiffs' purchases of units in the 3 Well Program." (*Id*. at 178.) They further solicited Plaintiffs' purchases of units in the 3 Well Program by e-mails, mailings, webinar slides, and

---

[2] Payson is not identified as a defendant in this suit. (*see* doc. 1-3 at 174.)

unsolicited telephone calls to Plaintiffs. (*Id*. at 194.) Defendants collectively made "an estimated $4,260,276.00 in sales commissions from selling units to Plaintiffs and Class Members." (*Id*. at 202.)

It was later discovered that Payson lacked the means to purchase 20% of the units and contributed nothing to the well costs. (*Id*. at 196.) The 3 Well Program was then abandoned, and none of Plaintiffs received back any portion of the difference between the $23 million that was raised in the offerings and the actual cost of the wells. (*Id*. at 178.) These funds were allegedly "appropriated by Payson . . . to the detriment of Plaintiffs and the limited partnerships." (*Id*.) On November 23, 2016, the Securities and Exchange Commission (SEC) announced that it had filed a civil action against Griffin and his brother, the owners of Payson, for violations of federal securities law by fraudulently offering interests in the 3 Well Program. (*Id*. at 195); *see SEC v. Griffin et al.*, No. 4:16-CV-00902 (E.D. Tex. Nov 23, 2016). It alleges that "the Griffins were the source of the PPMs' representations" about Payson's co-investment. (doc. 1-3 at 196.) Griffin agreed to accept the civil penalty and did "not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the Complaint or creating the impression that the Complaint is without factual basis." (*Id*. at 198.)

Plaintiffs subsequently filed this suit, which they identify as a class action "on behalf of [themselves] and all persons and entities, other than Defendants, who purchased or otherwise acquired units in the 3 Well Program by means of two sets of fraudulent offering documents." (*Id*. at 205.) They allege that the statements made in the two PPM and offering documents are fraudulent and misleading because:

> (1) Payson never purchased a single unit and thereby contributed no money to the 3 Well Program; (2) consequently, Payson paid nothing towards its 20% share of the cost of the 3 Well Program; (3) Payson lacked the financial means to make the $5.4 million payment; (4) the true cost of drilling and completing the wells was $16-$18

3

>million; (5) the "estimated" $24 million cost to drill and complete the wells was Payson's undisclosed fixed fee for drilling the wells, regardless of the actual drilling cost; and (6) Payson pocketed the difference between the $23 million raised in the two integrated offerings and the actual drilling cost–$16-$18 million.

(*Id*. at 177.) Plaintiffs further allege that they were never informed that "Payson had a secret 'turn-key' agreement with the limited partnerships whereby Payson would retain as its putative drilling fee, $24 million net of actual well costs of the projected $27 million raised in the offering." (*Id*. at 178.) They contend that these misrepresentations and omissions were made so that Payson could "fleece investors by unlawfully pocketing the difference between the false $24 million estimate and the wells actual cost." (doc. 30 at 8.)

Plaintiffs claim in Count I that "All Defendants" are liable under Article 581-33A(2) of the Texas Securities Act for "offering, soliciting, and/or selling units the 3 Well Program to Plaintiffs and Class Members by means of untrue statement of material facts and/or omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading." (doc. 1-3 at 206-07.) They allege in Count II that the "Control Person Defendants," identified as Griffin, Harvey, Plano Capital, Prinz, Valentine, S&M, and Young, are jointly and severally liable under Article 581-33F(1) of the Texas Securities Act as the "senior officers, directors, significant shareholders, or have indirect control over" the Broker-Dealer Defendants. (*Id*.) Plaintiffs seek monetary relief in an amount over $1,000,000.00, exemplary damages, and attorney fees. (*Id*. at 208.)

On September 7, 2017, Plaintiffs filed a motion for default judgment against MidAmerica, S&M, and Young, in which they seek rescission of the units that MidAmerica sold in the 3 Well Program for total award of $1,308,103.00 plus pre- and post-judgment interest, as well as attorneys' fees of $72,225.00 and costs of $2,852.53. (doc. 55 at 11-16.) MidAmerica is identified as one of the

Broker-Dealer Defendants that specifically sold 49.73 units in the 3 Well Program, but it has now "ceased doing business." (doc. 1-3 at 182.) Young and S&M are each identified as "control persons" for MidAmerica, where Young is identified as the company's president and S&M is identified as the "parent company" that "owns 75% or more" of MidAmerica. (*Id.*)

Prior to removal, Plaintiffs served both MidAmerica and S&M in state court, and they each filed "*pro se*" answers signed by Bruce Deemer, a non-attorney identified as the owner of S&M and the former secretary of MidAmerica. (*Id.* at 89-91, 259-62.) On June 6, 2017, Bruce Deemer was advised that he could not represent S&M and MidAmerica *pro se* as a non-attorney because they are both corporate defendants that require licensed legal representation, and if the two companies did not retain licensed counsel within 30 days, "their defenses may be stricken without further notice, and the Court may conduct further proceedings in accordance with the law, including but not limited to, entry of an order of default and/or default judgment." (doc. 4 at 1-2.) When S&M and MidAmerica failed to retain legal counsel, their defenses were stricken, and they were subsequently held in default on August 22, 2017. (docs. 7, 36, 50.)

Because Young was not served prior to removal, Plaintiffs were notified that if they failed to file a valid return of service within 90 days after the filing of the notice of removal, their action against Young may be dismissed. (doc. 5 at 1.) Plaintiffs subsequently filed proof of service on Young, but he failed to file an answer, and an entry of default was issued against him on August 7, 2017. (docs. 7, 39 at 1.)

While Plaintiffs' motion for default judgment was pending, PTX, Harvey, and Plano Capital

were all dismissed with prejudice from this suit under Rule 12(c)[3] for Plaintiffs' failure to state a claim against them under the pleading standards required by Rule 9(b)[4] for claims under the Texas Securities Act asserted in federal court. (docs. 65, 68, 69.)

MidAmerica, S&M, and Young have all failed to respond to Plaintiffs' motion for default judgment, and it is now ripe for recommendation. (doc. 54.)

## II. DEFAULT JUDGMENT

Rule 55 sets forth the conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment. There is a three-step process for securing a default judgment. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a party "has failed to plead or otherwise defend" against an action. FED. R. CIV. P. 55(a). Next, an entry of default must be entered when the default is established "by affidavit or otherwise." *See id.*; *NewYork Life Ins. Co.*, 84 F.3d at 141. Third, a party may apply to the clerk or the court for a default judgment after an entry of default. FED. R. CIV. P. 55(b); *New York Life Ins. Co.*, 84 F.3d at 141. Here, because Young, S&M, and MidAmerica have failed to plead or otherwise defend, and Plaintiffs have obtained an entry of default on all three parties, the first two requisites for a default judgment have been met. (docs. 39, 50.) Remaining for determination is whether entry of a

---

[3] A motion "'brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'" *Great Plains Trust Co.*, 313 F.3d at 312 (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)). The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6). *See Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007); *see Hoffman v. L & M Arts*, 2011 WL 3567419, at *4 (N.D. Tex. Aug.15, 2011) (citing *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010)).

[4] Federal Rule of Civil Procedure 9(b) states:

(b) **Fraud or Mistake; Conditions of Mind.** In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b).

6

default judgment is appropriate.

Where, as here, a default has been entered under Rule 55, "the factual allegations of the complaint are taken as true." *Pathway Senior Living LLC v. Pathways Senior Living LLC*, No. 3:15-CV-02607-M, 2016 WL 1059536, at *2 (N.D. Tex. Mar. 17, 2016). However, "'[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)). Moreover, "a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Id.* (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (per curiam)). "There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Only well-pleaded facts, not conclusions of law, are presumed to be true. *Id.* Default judgment "should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement." *Mason & Hanger–Silas Mason Co., Inc. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984) (per curiam). The decision to enter a judgment by default is discretionary. *Stelax Indus., Ltd. v. Donahue*, No. 3:03-CV-923-M, 2004 WL 733844, at *11 (N.D. Tex. Mar. 25, 2004).

Courts consider numerous factors in deciding whether to grant a motion for default judgment. 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice and Procedure § 2685 (3d ed. 1998). The Fifth Circuit has identified the following relevant factors: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether

7

the court would feel obligated to set aside a default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). A court "may also consider the amount of money at stake, the possibility of a dispute concerning material facts, and the strong policy favoring decisions on the merits." *Stelax Indus., Ltd.*, 2004 WL 733844, at *11. "Any doubt as to whether to enter or set aside a default judgment must be resolved in favor of the defaulting party." *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (citing *Lindsey*, 161 F.3d at 893).

Moreover, "[w]here one of multiple defendants is in default, as a general rule, a decree of default may be entered, but a judgment is withheld pending a decision on the merits as to the other defendants." *Raleigh Cycle Co. of Am. v. Risha*, No. H-84-522, 1987 WL 11889, at *1 (S.D. Tex. May 27, 1987) (citing *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 554 (1872). In *Frow*, the Supreme Court stated that:

> where a [complaint] makes a joint charge against several defendants, and one of them makes default, [a court] is simply to enter a default . . . and proceed with the cause upon the answers of the other defendants. The defaulting defendant has merely lost his standing in court. He will not be entitled to service of notices in the cause, nor to appear in it in any way. He can adduce no evidence, he cannot be heard at the final hearing. But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike–the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all.

82 U.S. (15 Wall.) at 554; *see also Lewis*, 236 F.3d at 768 (recognizing that when "a defending party establishes that plaintiff has no cause of action . . . this defense generally inures to the benefit of a defaulting defendant"); *Grimball v. New Orleans City*, No. 10-3657, 2012 WL 3027921, at *2 (E.D. La. July 24, 2012) (applying *Frow* to avoid the possibility of inconsistent judgments); *American S. Ins. Co. v. Buckley*, No. 1:09-CV-723, 2010 WL 5654105, at *3-5 (E.D. Tex. Dec. 28, 2010) (same),

8

*recommendation adopted by* 2011 WL 288604 (Jan. 27, 2011).[5] The rule developed in *Frow* applies when the liability is joint and several, but courts have consistently extended it to situations where defendants are similarly situated and where several defendants have related defenses. *See ADT LLC v. Capital Connect, Inc.*, No. 3:15-CV-2252-G, 2015 WL 11022769, at *1 (N.D. Tex. Dec. 17, 2015) (collecting cases). In such cases, a default judgment "should not be entered against a defaulting defendant if the other defendant prevails on the merits as a matter of sound policy." *Shaunfield v. Paramount Recovery Sys.*, No. 3:12-CV-4686-M-BH, 2014 WL 4814827, at *3 (N.D. Tex. Sept. 29, 2014) (citing *Gulf Coast Fans, Inc. v. Midwest Electronics,* 740 F.2d 1499, 1512 (11th Cir. 1984)).

Plaintiffs' second amended petition claims that four defendants, including MidAmerica, are liable under the Texas Securities Act[6] as "broker-dealers" for selling security interests in the 3 Well Program "by means of untrue statement of material facts and/or omissions to state material facts necessary in order to make the statements made . . . not misleading." (doc. 1-3 at 183, 206-07.) It further alleges that seven other defendants, including S&M and Young, are jointly and severally liable under the Texas Securities Act[7] with the Broker-Dealer Defendants because they are the "senior officers, directors, significant shareholders, or have indirect control over [a specific broker-dealer]." (*Id*.) Plaintiffs' cause of action is premised upon the global allegation that "Defendants disseminated

---

[5] *Compare Mori Seiki USA, Inc. v. McIntyre*, No. 3:06-CV-2344-B, 2008 WL 577274, at *2 (N.D. Tex. Mar. 4, 2008) (granting default judgment in a case involving joint and several liability based on a finding that there was no risk of inconsistent judgments).

[6] Article 581–33(A)(2) of the Texas Securities Act "imposes liability on [a] person who offers or sells a security. . . by means of an untrue statement of a material fact or an omission to state a material fact." *Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 485-86 (Tex. 2005) (internal citations omitted).

[7] Under Article 581–33F(1) of the Texas Securities Act, "[a] person who directly or indirectly controls a seller or issuer of a security is liable jointly and severally under Section 33A with the seller or issuer and to the same extent as the seller or issuer." *Busse v. Pac. Cattle Feeding Fund*, 896 S.W.2d 807, 814-815 (Tex. App.–Texarkana 1995, writ denied) ("Major shareholders . . . and directors . . . are control persons.").

9

to Plaintiffs offering documents, including the 3 Well PPM and the 3 Well 2014 PPM, containing the . . . untrue statements of material facts and/or omissions of material facts, and reiterated to Plaintiffs the same, in meetings, communications, at investor events, dinners, and sales presentations" that occurred in "all U.S. States," including events in Texas. (*Id.* at 189-90, 203.) Based upon these allegations, one of the Broker-Dealer Defendants and its two "control persons" have already been dismissed with prejudice from this suit for failure to state a claim against them on grounds that the second amended petition "vaguely alleges that all Defendants, including all four of the Broker-Dealer Defendants, 'disseminated' offering documents without any particularity as to who created or made the specific misrepresentations/omissions," and it "includes only generalized time frames and expansive locations alleged globally against all Defendants without any specificity regarding the dates and events." (doc. 65 at 9-11, 13.) Excluding the three defaulting parties, the remaining Defendants include two broker-dealers, three "control persons," the managing general partner of Payson, and the director of client relations at Payson. A judgment on the merits has not yet been entered as to any of them.

 Here, the factors favor denial of default judgment against MidAmerica, S&M, and Young because Plaintiffs have not separated their claims or allegations among the four Broker-Dealer Defendants to establish liability, and they seek the same type of remedy against all Defendants. *See ADT LLC*, 2015 WL 11022769, at *1 (denying entry of judgment against defaulting defendants because "the plaintiffs assert the same claims and seek the same remedies against the defaulting defendants as they do against the non-defaulting defendants"). Under the first factor, it is not clear whether material issues of fact remain because three Defendants have already been dismissed with prejudice for Plaintiffs' failure to state a claim against them based upon the exact same allegations and

10

claims brought against MidAmerica, S&M, and Young. *See Smith v. Sanders*, No. 3:12-CV-4377-M, 2017 WL 1501536, at *3 (N.D. Tex. Apr. 7, 2017), *adopted by* 2017 WL 1498034 (N.D. Tex. Apr. 26, 2017) (denying default judgment in part because "there are no material issues of fact or issues of substantial public importance at stake where Relator's claims against other defendants based on similar allegations have been dismissed for failure to state a claim"). Factors two and five similarly favor denial because there appears to be little or no prejudice to Plaintiffs if this motion is denied as the suit will proceed against the remaining Defendants, and default judgment appears especially harsh in light of the substantial amount of requested damages– $1,308,103.00, plus attorneys' fees and costs totaling over $75,000.00. *See id.*; *see also Lott v. Indian Harbor Marine, Inc.*, No. 96-2480, 1997 WL 325368 (E.D. La. June 11, 1997) (denying motion for default judgment in part because the damages sought exceeded $500,000). Entry of default judgment against MidAmerica, S&M, and Young could also result in the "inconsistent and incongruent situation against which the *Frow* decision warns." *American S. Ins. Co.*, 2010 WL 5654105, at *4; *see also Metropcs v. PC-Wiz Corp*, No. 3:16-CV-0442-B, 2017 WL 131696, at *6 (N.D. Tex. Jan. 13, 2017) (denying to enter a default judgment against a defaulting defendant "[b]ecause [he] is only one of six Defendants in this action and because Plaintiff does not separate its claims with regard to each defendant"). An entry of default judgment should be delayed pending final judgment as to the remaining Defendants.

### III. RECOMMENDATION

Plaintiffs' motion for default judgment should be **DENIED**.

**SO RECOMMENDED** on this 11th day of May, 2018.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

11


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE