# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| TIM MOORE, et al., | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 3:17-CV-1436-S-BH |
| | ) | |
| PAYSON PETROLEUM | ) | |
| GRAYSON, LLC, et al., | ) | |
|     Defendants. | ) | Referred to U.S. Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

By *Special Order No. 3-251*, this *pro se* case has been automatically referred for full case management. Before the Court for determination is the plaintiffs' *Motion for Class Certification and Appointment of Class Representative and Class Counsel*, filed April 24, 2018 (doc. 73). Based upon the relevant filings, evidence, and applicable law, the motion is **DENIED**.

## I. BACKGROUND

On February 22, 2017, Tim Moore (Moore), David Vednor (Vednor), Roland Lentz (Lentz), James Rosemeyer (Rosemeyer), Virginia Humphrey (Humphrey), William Martin (Martin), and Jeff Wilshire (Wilshire) (collectively Plaintiffs) filed this class action suit alleging violations of the Texas Securities Act against several defendants, including Payson Petroleum Grayson, LLC (Payson Grayson), Matthew Carl Griffin (Griffin), Dan Nichter (Nichter), EDI Financial, Inc. (EDI), Financial West Group (Financial West), Martin William Prinz (Prinz), and Gene Charles Valentine (Valentine) (collectively Defendants) in Texas state court.[1] (*See* doc. 1-3 at 23-57, 174-210.)[2] On May 31, 2017, Defendants removed this action to federal court, asserting original jurisdiction under the Class Action

---

[1] Three additional defendants have already been dismissed from this suit, (docs. 65, 68, 69), and an entry of default has been issued against three other defendants (docs. 36, 39, 50).

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Fairness Act provisions of 28 U.S.C. § 1332(d)(2). (doc. 1.)

At issue is a two-phase offering to invest in two Texas limited partnerships to fund the drilling, completion, and operation of two vertical wells and one horizontal well (3 Well Program) owned by Payson Petroleum, Inc.[3] (Payson), in Grayson County, Texas. (doc. 1-3 at 175-76.) The first phase offered 1,000 units at a cost of $27,000.00 per unit for the Payson Petroleum 3 Well, L.P. (3 Well), commencing on October 23, 2013, through December 31, 2013. (*Id*. at 175, 200.) Because only 277.65 units were sold, a second offering phase for the remaining 722.35 units of Payson Petroleum 3 Well 2014, L.P. (3 Well 2014), commenced on January 12, 2014, through June 30, 2014. (*Id*.) The two offerings in the 3 Well Program raised $23 million in total. (*Id*. at 200.) A private placement memorandum (PPM) was issued for each offering. (*Id*. at 175.)

Plaintiffs allege that the offering documents included statements on how:

> (1) Payson agreed to purchase 200 units in the 3 Well Program for $5.4 million; (2) in no event will Payson not purchase at least 100 units in the 3 Well Program; (3) Payson's $5.4 million capital infusion would fund 20% of the cost of the 3 Well Program; and (4) the "estimated" cost to drill and complete the wells by Payson was approximately $24 million.

(*Id*. at 176-77.) "Defendants" and "Broker-Dealer Defendants," identified in part as EDI and Financial West, allegedly "disseminated" these offering documents to Plaintiffs and other investors, and they "reiterated to Plaintiffs the same, in meetings and communications, at investor events, dinners, and sales presentations, and by other marketing and promoting mechanisms, in order to solicit Plaintiffs' purchases of units in the 3 Well Program." (*Id*. at 178.) They further solicited Plaintiffs' purchases of units in the 3 Well Program by e-mails, mailings, webinar slides, and unsolicited telephone calls to Plaintiffs. (*Id*. at 194.) Defendants collectively made "an estimated $4,260,276.00 in sales

---

[3] Payson is not identified as a defendant in this suit. (*see* doc. 1-3 at 174.)

commissions from selling units to Plaintiffs and Class Members." (*Id*. at 202.)

It was later discovered that Payson lacked the means to purchase 20% of the units and contributed nothing to the well costs. (*Id*. at 196.) The 3 Well Program was then abandoned, and none of Plaintiffs received back any portion of the difference between the $23 million that was raised in the offerings and the actual cost of the wells. (*Id*. at 178.) These funds were allegedly "appropriated by Payson . . . to the detriment of Plaintiffs and the limited partnerships." (*Id*.) On November 23, 2016, the Securities and Exchange Commission (SEC) announced that it had filed a civil action against Griffin and his brother, the owners of Payson, for violations of federal securities law by fraudulently offering interests in the 3 Well Program. (*Id*. at 195); *see SEC v. Griffin et al.*, No. 4:16-CV-00902 (E.D. Tex. Nov 23, 2016). It alleges that "the Griffins were the source of the PPMs' representations" about Payson's co-investment. (doc. 1-3 at 196.) Griffin agreed to accept the civil penalty and did "not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the Complaint or creating the impression that the Complaint is without factual basis." (*Id*. at 198.)

Plaintiffs subsequently filed this action "on behalf of [themselves] and all persons and entities, other than Defendants, who purchased or otherwise acquired units in the 3 Well Program by means of two sets of fraudulent offering documents." (*Id*. at 205.) They allege that the statements made in the two PPM and offering documents are fraudulent and misleading because:

> (1) Payson never purchased a single unit and thereby contributed no money to the 3 Well Program; (2) consequently, Payson paid nothing towards its 20% share of the cost of the 3 Well Program; (3) Payson lacked the financial means to make the $5.4 million payment; (4) the true cost of drilling and completing the wells was $16-$18 million; (5) the "estimated" $24 million cost to drill and complete the wells was Payson's undisclosed fixed fee for drilling the wells, regardless of the actual drilling cost; and (6) Payson pocketed the difference between the $23 million raised in the two integrated offerings and the actual drilling cost–$16-$18 million.

3

(*Id*. at 177.) Plaintiffs also claim that they were never informed that "Payson had a secret 'turn-key' agreement with the limited partnerships whereby Payson would retain as its putative drilling fee, $24 million net of actual well costs of the projected $27 million raised in the offering." (*Id*. at 178.) They contend that these misrepresentations and omissions were made so that Payson could "fleece investors by unlawfully pocketing the difference between the false $24 million estimate and the wells actual cost." (doc. 30 at 8.)

Plaintiffs claim in Count I that "All Defendants" are liable under Article 581-33A(2) of the Texas Securities Act for "offering, soliciting, and/or selling units the 3 Well Program to Plaintiffs and Class Members by means of untrue statement of material facts and/or omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading." (doc. 1-3 at 206-07.) They allege in Count II that the "Control Person Defendants," identified in part as Griffin, Prinz, and Valentine, are jointly and severally liable under Article 581-33F(1) of the Texas Securities Act as the "senior officers, directors, significant shareholders, or have indirect control over" the Broker-Dealer Defendants. (*Id*.) Plaintiffs seek monetary relief in an amount over $1,000,000.00, exemplary damages, and attorney fees. (*Id*. at 208.)

On April 24, 2018, Plaintiffs filed a motion for class certification and appointment of class representatives and counsel with affidavits from their legal counsel and plaintiffs Moore, Martin, and Wilshire. (docs. 73, 74, 74-2, 74-3, 74-4.) They seek to have all seven named Plaintiffs be made class representatives for the following proposed class:

> All persons and/or entities that purchased or otherwise acquired limited and/or general partnership interests (the "units") in two Texas Limited Partnerships, Payson Petroleum 3 Well, LP ("3 Well") and Payson Petroleum 3 Well 2014, LP ("3 Well 2014," together with 3 Well, the "3 Well Program"), during the period October 23, 2013, through June 30, 2014, inclusive (the "Class Period"). Excluded from the Class

4

are: (a) persons who suffered no compensable losses; and (b) Defendants; the present and former officers and directors of Payson Petroleum Grayson, LLC, and/or Payson Petroleum 3 Well, LLC, at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which any of the Defendants, or any person excluded under this subsection (b), has or had a controlling interest at any time. (doc. 74 at 5.)

With a timely filed response and reply, this motion is ripe for determination. (docs. 79, 83.)

## II. MOTION TO CERTIFY

Plaintiffs move for class certification under Federal Rule of Civil Procedure 23(b)(3). (doc. 74.)

**A.     Rule 23**

"A class may be certified under Rule 23(b)(3) only if it meets the four prerequisites found in Rule 23(a) and the two additional requirements found in Rule 23(b)(3)." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir. 1999). The four Rule 23(a) prerequisites are:

> (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class).

*Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). The two additional Rule 23(b) requirements are "predominance" and "superiority," which require that common questions "predominate over any questions affecting only individual members," and that class resolution be "superior to other available methods for fairly and efficiently adjudicating the controversy."[4] Rule 23(b)(3); *see also Amchem Prods.*, 521 U.S. at 615; *Mullen*, 186 F.3d at 623-24.

---

[4] A court must further determine a proposed class's "definability" and "ascertainability" because they are additional "implied prerequisites to Rule 23's requirements for class certification." *Seeligson v. Devon Energy Prod. Co., L.P.*, No. 3:16-CV-00082-K, 2017 WL 68013, at *3 (N.D. Tex. Jan. 6, 2017) (citing *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)). In their response, Defendants do not directly contest the existence of these implied prerequisites. (*See* doc. 79.)

5

A class action suit is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," where a party seeking to maintain a class action must affirmatively demonstrate her compliance with Rule 23. *Galitski v. Samsung Telecommunications Am., LLC*, No. 3:12-CV-4782-D, 2015 WL 5319802, at *4 (N.D. Tex. Sept. 11, 2015) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). A plaintiff must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a), as well as "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.*

A court "must rigorously analyze whether Rule 23 has been met, conducting a reasoned and thorough analysis of whether a class may be certified." *Ogden v. AmeriCredit Corp.*, 225 F.R.D. 529, 531 (N.D. Tex. 2005) (citations omitted). Plaintiffs bear the burden of showing that class certification is appropriate. *Unger v. Amedisys, Inc.*, 401 F.3d 316, 320 (5th Cir. 2005). Class certification is at the discretion of the court, which has the inherent power to manage and control pending litigation. *Fener v. Operating Eng'r Const. Indus. & Miscellaneous Pension Fund (Local 66)*, 579 F.3d 401, 406 (5th Cir. 2009). Although a court does not reach the merits of the case in evaluating whether class treatment is appropriate, it "may look past the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law to make a meaningful decision on class certification." *White Glove Staffing, Inc. v. Methodist Hosps. of Dallas*, No. 3:17-CV-1158-K, 2018 WL 2415027, at *1-2 (N.D. Tex. May 29, 2018) (citing *Unger*, 401 F.3d 316 at 321).

**B.** **Numerosity**

Plaintiffs contend that numerosity is established because joinder is impractical, as the proposed class "consists of over 150 investors." (doc. 74 at 11.)

To show numerosity, a plaintiff must demonstrate "some evidence" or a "reasonable estimate" of the number of purported class members to satisfy Rule 23(a). *See Pederson v. La. State Univ.*, 213 F.3d 858, 866 (5th Cir. 2000). Although the Fifth Circuit has held that a putative class of 100 to 150 members "is within the range that generally satisfies the numerosity requirement," "the number of members in a proposed class is not determinative of whether joinder is impracticable." *In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013) (quoting *Mullen*, 186 F.3d at 624). Numerosity entails consideration of "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. Unit A July 1981).

Here, Plaintiffs allege that the proposed class "consists of over 150 investors," that joinder is impracticable because they are "geographically dispersed," and it would be "economically unfeasible for each aggrieved investor to vindicate his or her rights individually." (doc. 74 at 11.) They fail to demonstrate "some evidence" of these allegations, however, and they also fail to provide any explanation as to why over 150 investors is a "reasonable estimate." (*See* docs. 74-1, 74-2, 74-3, 74-4.) Their reply explains that their counsel has "already identified more than 150 class members in numerous states," and this information can be provided "[a]t the Court's request." (doc. 83 at 10-11.) They do not contend that this information was unavailable when their motion was initially filed, and they fail to explain why this information was not included in the affidavit from Plaintiffs' counsel or why the burden is on the Court to "request" it.[5] *See Pederson*, 213 F.3d at 868 (explaining that a mere allegation that the class is too numerous for joinder is insufficient). Plaintiffs have accordingly failed

---

[5] Plaintiffs do point out that the investor information is "sensitive, personal identifying information," but they fail to explain why they did not attempt to file the documents under seal or redacted. (doc. 83 at 11 n.3.)

to meet their burden to show the existence of the numerosity requirement. *See Simms v. Jones*, 296 F.R.D. 485, 499-500 (N.D. Tex. 2013), *aff'd sub nom.*, *Ibe v. Jones*, 836 F.3d 516 (5th Cir. 2016) (denying class certification because the plaintiffs "produced no evidence to show that there is significant geographic diversity among proposed class members or that their diversity effectively precludes joinder"); *see Pfeffer v. HSA Retail, Inc.*, No. SA-11-CV-959-XR, 2012 WL 1910034, at *2 (W.D. Tex. May 24, 2012) (denying class certification because the plaintiff's "mere allegation that it is 'clear' that joinder would be impracticable is not sufficient to establish numerosity," even though the plaintiff "apparently intended to supplement his Motion with supporting materials"). Because they have failed to show the prerequisite of numerosity, Plaintiffs do not meet their burden to show that class certification is proper.

**C.      Adequacy of Representation**

Even assuming that Plaintiffs have established the numerosity prerequisite under Rule 23(a), they also fail to show that the class representatives will fairly and adequately protect the interests of the class.

When assessing the adequacy of representation under Rule 23, courts look to the following three elements: (1) the zeal and competence of the proposed class representatives' counsel; (2) the willingness and ability of proposed class representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the absence of conflict and antagonism between the named plaintiffs and the interests of the class they seek to represent. *See Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). A class representative must show "an inclination to take [an] active role in monitoring class counsel's activities." *Ogden*, 225 F.R.D. at 535-36 (quoting *Kase v. Salomon Smith Barney, Inc.*, 218 F.R.D. 149 (S.D. Tex. 2003)). Because "absent class

8

members are conclusively bound by the judgment in any class action brought on their behalf, the court must be especially vigilant [in] ensur[ing] that the due process rights of all class members are safeguarded through adequate representation at all times." *Ardoin v. Stine Lumber Co.*, 220 F.R.D. 459, 466 (W.D. La. 2004) (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 480 (5th Cir. 2001)). Furthermore, adequacy cannot be presumed as it "is error to presume the adequacy of the putative representative[ ] in the absence of specific proof otherwise." *Ogden*, 225 F.R.D. at 532 (quoting *In re Am. Commer. Lines, LLC*, No. 00-252, 2002 WL 1066743, at *9 (E.D. La. May 28, 2002)).

Here, Plaintiffs argue that they may fairly and adequately protect the interests of the proposed class because their attorneys have "extensive experience in the field of securities litigation," and their interests are "predicated on the same wrongful conduct that gives rise to the claims" of the proposed class.[6] (doc. 74 at 13-14.) They provide their counsel's firm resume and the affidavits from three of the seven named Plaintiffs. (*See* docs. 74-1-74-5.) In the affidavits, Moore, Martin, and Wilshire declare that they are willing to serve as a class representative, understand their responsibility to absent class members, and are able to "diligently perform all such duties" required of them. (docs. 74-2 at 4, 74-3 at 4, 74-4 at 4.) Plaintiffs, however, do not explain why the remaining four proposed class representatives did not submit affidavits affirming their willingness to serve as a class representative, and they wholly fail to include any specific factual allegations about the four named plaintiffs who did not submit an affidavit, even after Defendants specifically point out this lack of evidence. (doc. 83 at 8-9.) This deficiency is particularly significant as to plaintiff Humphrey because she is the sole

---

[6] Defendants do not contest the "zeal" or "competence" of Plaintiffs' counsel's law firm to litigate this suit. (*See* doc. 79.)

named plaintiff to have allegedly purchased from Financial West and Valentine, which would make her the only proposed representative for those class members who purchased solely from those two defendants. (*See* doc. 1-3 at 183-184.) Plaintiffs have accordingly failed to demonstrate that all of the proposed class representatives have shown "an inclination to take [an] active role in monitoring class counsel's activities." *Ogden*, 225 F.R.D. at 535-36 (denying class certification because the proposed class representative's "failure to monitor her attorneys, or even research their suitability as class counsel, is indicative of her lack of participation in the litigation of her claims"). Plaintiffs have not met their burden to show that class certification is proper under Rule 23.[7]

### III. CONCLUSION

Plaintiffs' motion for class certification and appointment of class representatives and class counsel (doc. 73) is **DENIED**.

**SO ORDERED** this 13th day of August, 2018.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[7] Because Plaintiffs fail to show the existence of at least two prerequisites for class certification under Rule 23(a), it is unnecessary to determine whether they meet the two additional requirements under Rule 23(b)(3) or whether Plaintiffs' attorneys should be appointed as class counsel under Rule 23(g). *See Simms v. Jones*, 296 F.R.D. 485, 500 (N.D. Tex. 2013) (finding it "unnecessary to consider whether the [proposed class] satisfies the other requirements of Rule 23" when the plaintiffs failed to meet their burden to show numerosity).